IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JIMMY PEREZ-OLIVO | * |
| Petitioner | * Civil No. 97-2068(SEC) |
| | * 28 U.S.C. § 2255 |
| v. | * |
| UNITED STATES OF AMERICA | * |
| Respondent | * |

**OPINION AND ORDER**

Pending before the Court is the Magistrate-Judge's report and recommendation regarding petitioner's request for habeas relief (**Docket # 62**). Upon *de novo* review, and after considering the parties' objections and subsequent filings thereto, as well as the applicable law, we reject in part and accept in part the Magistrate-Judge's report and recommendation, and now **DENY** petitioner's request for habeas relief (**Dockets # 1, # 8, # 11 and # 14**). The above-captioned action shall, therefore, be **DISMISSED**.

**Background**

Petitioner was indicted along with others for conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (count one); aiding and abetting in the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (count two); and aiding and abetting in the carrying of a firearm in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (count three). He originally pled not guilty, but later moved for a change of plea (**Crim. No. 96-044, Docket # 50**). Accordingly, a change of plea hearing was held during which the United States filed a version of the facts, which was signed by the parties, and which was duly accepted by petitioner in open court



**Civil No. 97-2068(SEC)**                                                                 2

(**Crim. No. 96-044, Dockets # 52 and # 53**). At the hearing, the government also delivered to the Court the terms of the plea it had agreed to with petitioner:

> [T]here is no written plea agreement in this particular case. However[,] there is a plea agreement consents (sic) to the defendant pleading guilty to counts two and three of the [i]ndictment, taking in consideration his participation in the commission of the offense[,] which comes at the very end of the conspiracy[,] and for that reason we are not going to press our request for him to plead guilty to count one.
>
> Had he plead guilty to count one the minimum term of imprisonment was 10 years which is not the case with defendant pleading guilty to count two of the indictment with the minimum term of imprisonment is the statutory term of five years (sic).

(**Crim. No. 96-044, Docket # 142, at 3**).

Petitioner was personally addressed in open court as to the voluntariness and willingness of his guilty plea. He was advised of (a) the nature and purpose of the hearing; (b) the fact that all inquiries were to be conducted under oath, and the possibility of being prosecuted for perjury for stating false information; and (c) his constitutional rights. The Court also inquired as to petitioner's competency to plea. Furthermore, petitioner was advised of the charges against him and the possible penalties upon conviction. **Id. at 3-16**.

> THE COURT: Very well. Mr. Pérez[,] you are pleading guilty to counts two and three of the indictment in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Let me again inform you what count two and count three provide[]. The accusation, the charges are that on or about February 13, 1996[,] together with the other defendants[,] you knowingly, willfully, intentionally and unlawfully did possess with intent to distribute approximately two kilos gross weight of cocaine. That's count two.
>
> And [in] count three you are charged with other defendants [with] aiding and abetting each other . . . [in] possessing a firearm, carrying a firearm in relation to a drug trafficking crime, an offense which is prosecuted and prohibited by Title 18

**Civil No. 97-2068(SEC)** 3

section 924(c)(1) and (2). Now[,] are these charges the ones that you are pleading guilty to?

THE DEFENDANT: Yes, sir.

THE COURT: Is this what you did?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now let me remind you that if this case went to trial, to be found guilty of this offense the government would have to prove beyond a reasonable doubt in both of these charges that you knowingly, willfully, intentionally and unlawfully . . . aid[ed] and abett[ed] . . . the other defendants . . . in the possess[ion] with intent to distribute approximately the kilos . . . of cocaine regarding count one. The government would have to prove that beyond a reasonable doubt.

Regarding count three the government would have to prove again that[,] together with the other defendants, and aiding and abetting each other, you knowingly, willfully, and unlawfully carried that firearm[,] specifically the .22 caliber revolver during and in relation to a drug trafficking crime. The[] [government] would have to prove that beyond a reasonable doubt. Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you consider yourself guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Are you repentant of having committed th[ese] offense[s]?

THE DEFENDANT: I am very repentant, sir.

THE COURT: Let me inform you of the maximum punishment that the law provides to the offense for which you want to plead guilty, counts two and three of this indictment. Regarding count two[,] it carries a maximum term of imprisonment of 40 years and minimum term of imprisonment of 5 years. There is a maximum fine of up to $ 4 million and a supervised release term of not more than 4 years and[,] of course[,] a special monetary assessment of $ 50.

Regarding count three[,] the penalty is a fixed term of imprisonment of 60 months that will be imposed consecutive to any term of imprisonment imposed regarding count two. It also has a supervised release term of not more than 3 years. With regard to any term of supervised release that may be imposed you are also

Civil No. 97-2068(SEC)                                                                                          4

informed that if you violate the conditions of release the court may impose an additional time in prison.

Do you understand these possible and very serious consequences of your plea?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Mr. Medina [petitioner's change of plea counsel] have you discussed the sentencing guidelines with the defendant?

THE DEFENDANT: Yes, Your Honor. I, on the occasions that we have met in my office, I have explained to him what my conception of the applicable sentencing guidelines, how the sentencing guidelines work[], how it is computed and I have also explained to him what is meant by the term of supervised release and it is my understanding, my perception of Mr. Pérez Olivo, he is very well aware of the sentence and the consequences of the involvement of th[ese] offense[s] (sic).

THE COURT: Mr. Pérez, do you understand that sentencing guidelines have been established that are used to determine the actual sentence which should be imposed and that the sentence may be as much a the statutory maximum that I have informed you and that you have acknowledged?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Mr. Pérez, do you understand that until a pre-sentence report is complete the court and your counsel will not know precisely what the range of your sentence will be under the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that after it has been determined what guideline applies to a case the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guideline?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Do you also understand that under some circumstances you are or the government may have the right to appeal any sentence that I impose?

THE DEFENDANT: Yes, sir.

Civil No. 97-2068(SEC)                                                                                     5

>THE COURT: Do you also understand that parole has been abolished and that if you are sentenced to prison you will not be released on parole?
>
>THE DEFENDANT: Yes, Your Honor, I do.

**Id. at 7-12.**

After the prosecutor read to the Court the government's version of the facts, the Court asked petitioner if he was "in agreement with that version," to which the latter responded that he was. **Id. at 12-15.** Petitioner asserted that he still desired to plead guilty, and he did so as to counts two and three. The Court thus accepted petitioner's guilty plea and adjudged him accordingly. **Id. at 15-16.** It is worth noting that at the change of plea hearing, **petitioner expressed that he was satisfied with defense counsel's representation.**[1] **Id. at 6.**

At the sentencing hearing, attorney Yolanda A. Collazo, petitioner's new appointed counsel, presented no objections to the presentence report, although she requested that the Court consider a sentence at the lower end of the applicable guideline. In addition, petitioner personally addressed the Court concerning his repentance. The Court then sentenced petitioner (**Crim. No. 96-044, Docket # 141, at 4-9**). He was granted the privilege of voluntary surrender to begin service of his sentence, **and he was also advised of his right to appeal. Id. at 10.**

Defendant did not appeal from his judgment of conviction and sentence. However, on July 14, 1997, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, requesting the vacation of his judgment on various grounds (**Civil No. 97-2068, Docket # 1**). He later filed a supplemental pleading in support of his § 2255 petition, in which he additionally charged that he was

---

[1] Petitioner was represented at the change of plea hearing by attorney Salixto Medina. After the latter withdrew, attorney Yolanda A. Collazo was appointed to represent him for the sentencing phase.

AO 72A
(Rev.8/82)

**Civil No. 97-2068(SEC)**                                                                                                   6

denied effective assistance of counsel to perfect an appeal (**Civil No. 97-2068, Docket # 11**). On January 22, 1998, we issued an order summarily dismissing all of petitioner's arguments, except that which concerned counsel's post-sentence efforts regarding his appeal. We ordered the United States to brief this issue (**Civil No. 97-2068, Dockets # 23 and # 24**). The government complied and on February 12, 1998, we ordered the dismissal of petitioner's petition in its entirety (**Civil No. 97-2068, Dockets # 29 and # 30**). We determined that "petitioner did not lose his right to appeal through counsel's dereliction. Rather, petitioner, through his instructions to counsel, **validly waived his right to appeal after he was 'personally informed' by counsel of his right to appeal and the term to file a notice of appeal**" (**Civil No. 97-2068, Docket # 29, at 2**) (emphasis added).

Petitioner subsequently moved for reconsideration. On April 24, 1998, the Court, out of an "over-abundance of caution," granted petitioner's request, "only as to the extent of vacating the judgment . . . for purposes of referral . . . to a United States Magistrate Judge," with instructions to "hold an evidentiary hearing limited to the question of whether petitioner instructed counsel to file an appeal" (**Civil No. 97-2068, Docket # 39, at 2**). The Court further instructed the Magistrate-Judge to make findings and recommendations to the Court on this matter. **Id.**

An evidentiary hearing on petitioner's claim was held before the Magistrate-Judge on July 17, 1998. On July 28, 1998, the Magistrate-Judge issued a report and recommendation (**Civil No. 97-2068, Docket # 62**). In his report and recommendation, the Magistrate-Judge aptly summarized the evidence presented at the hearing, which consisted of the testimonies of attorney Collazo, petitioner, and Jackeline Mas-Mulero, petitioner's common-law wife at the time of the events in question. These testimonies portray two completely opposite accounts of what ensued after petitioner's sentencing hearing.

**Civil No. 97-2068(SEC)**                                                                 7

On the one hand, attorney Collazo testified **that after the sentencing hearing, she met with petitioner in the hall outside the undersigned's courtroom.** Mas-Mulero was also present, although Collazo never talked to her (**Civil No. 97-2068, Docket # 67, at 17, 67-68**). **Collazo testified that she advised petitioner of his right to appeal and the term to file a notice of appeal. Id. at 21. She further testified that petitioner did not instruct her to file a notice of appeal, and he did not in any way express that he intended, or wished, to do so. Id. at 16.** She did not obtain a written waiver from petitioner stating that he did not want to appeal, because he did not mention anything in that regard. **Id. at 18.** Although Collazo could not affirm that petitioner did not talk to her about obtaining certain documents in order to perfect an appeal, she did not remember him having done so. **Id. at 16-17, 33-34.** Thereafter, Collazo never saw petitioner again. Also, she did not recall having received any letters from petitioner or any messages from him on her answering machine during the ten-day period following sentencing. **Id. at 18-20.**

On the other hand, are the contrary testimonies of petitioner and Mas-Mulero. The latter testified that once in the hallway after the sentencing hearing had concluded, petitioner asked Collazo whether an appeal could be filed as to the § 924(c)(1) charge, to which Collazo answered that it could be done. **Id. at 38.** Mas-Mulero further testified that Collazo mentioned that she could handle petitioner's appeal because she was his court-appointed counsel. Collazo then gave each of them a business card, and told them to call her during the week. **Id. at 38, 45.**

Mas-Mulero further testified that they called Collazo at her office—presumably at the telephone number on her business card—"an endless number of times," but to no avail. They left Collazo various messages on her answering machine, but she never returned them. **Id. at 38.** Mas-Mulero recalled petitioner requesting "some documents or some appeal papers" from Collazo. The

latter, according to Mas-Mulero, said that "she was going to send . . . [petitioner] the appeal papers." **Id. at 39**. Mas-Mulero also remembered having personally told Collazo to file an appeal on petitioner's behalf. **Id. at 44**.

Although Collazo did not return their calls, at no time did petitioner or Mas-Mulero ever contact another attorney. **Id. at 46**. They did not bring the issue to the attention of the Court, nor did they complain about the situation to anyone in a position of authority. **Id. at 47-48**.

Finally, petitioner testified that, after sentencing, he talked to Collazo about "the appeal." **Id. at 55-56**. He already knew that he had ten days to initiate appellate proceedings. **Id. at 56, 58-59**. He recalled Collazo telling him "that she would get . . . [him] the Court papers, that . . . [he] shouldn't do anything because it wouldn't cost her anything to do it since she was . . . court appointed . . ." **Id. at 56**. Collazo gave him a business card and told him "to call her during the week[;] that she would take care of it . . ." **Id.** Petitioner further testified that he "specifically asked . . . [Collazo] to appeal the case, the 924[(c)(1)] charge, the weapon[s] charge." **Id.** He stated, however, that Collazo did not tell him that he had a right to appeal his sentence. **Id. at 57**. Thereafter, petitioner did not hear from, or meet with, Collazo until after he had requested habeas relief. **Id.**

During the time immediately after the sentencing hearing, petitioner "called . . . [Collazo] a couple of times." He also sent her "a post card for Christmas with a note in it asking her for the papers," but he "never got an answer from that card or from the phone calls that . . . [he] made immediately after the sentencing." **Id. at 57**. Petitioner recalled calling Collazo daily about twice or thrice for the next two or three weeks following the sentencing hearing. **Id. at 58**. Despite his unsuccessful attempts to communicate with Collazo—which situation, according to Mas-Mulero had

**Civil No. 97-2068(SEC)**                                                                                              9

him in a state of despair, **id. at 46—**, petitioner did not attempt to contact another attorney, and he did not complain to the Court or to anyone in a position of authority. **Id. at 59-60**. During the nearly four months that petitioner was still free waiting to voluntarily surrender, he did not relate his situation to anyone, except to, allegedly, U.S. Pretrial Services Officer Rafael Gelpí. **Id. at 61-62**. However, as the Magistrate-Judge noted in his report and recommendation: "A verification of the Pretrial Service[s] record of. . . [petitioner] fail[ed] to reveal any annotation to this effect" (**Civil No. 97-2068, Docket # 62, at 11 n.5**). Officer Gelpí did not testify at the evidentiary hearing. Petitioner, moreover, did not try to meet with Collazo at the Courthouse, and he did not try to reach her at the office since he did not have the address. **Id. at 62**.

Petitioner also stated that he did not complain about his § 924(c)(1) charge at the sentencing hearing because he was "coached not to say anything unless. . . asked." **Id**. He was allegedly coached by his "previous attorneys," although he only made specific mention of his presentence phase attorney. **Id. at 63**. Petitioner argued, however, that, having been coached for the change of plea hearing, he was "already coached" for the sentencing hearing. Petitioner did not complain to the Court about this coaching because he was "scared," he was "terrified." **Id**.

> Q. Did anyone threaten you with anything at that point in time that would cause you to be terrified?
>
> A. Yes.
>
> Q. What was the threat?
>
> A. Well, it wasn't the way it was said. It was the actions and everything on the part of Attorney Medina. You know, he acted more like a prosecutor than an attorney.
>
> Q. My question is did he make any threats to you?

Civil No. 97-2068(SEC)                                                                                         10

> A. Did he make any threats?
>
> Q. Yes, to have you terrified.
>
> A. The was he acted. The way he talked to me. The way he was going about everything in my case—scary.
>
> Q. And you say you are fifty (50) years old?
>
> A. Yes.
>
> Q. And, you have a prior narcotics conviction?
>
> A. Right.
>
> Q. And, at that point in time you were terrified because of the way Mr. Medina acted[.] [D]id you ask him not to represent you?
>
> A. I was scared of him.
>
> Q. You were scare[d] of Mr. Medina?
>
> A. I was scared of him. I was scared of the Federal prosecutor, which was you, sir [referring to Assistant U.S. Attorney Antonio Bazán, who was cross-examining petitioner][.] I was scared of the Court[.] I was scared of the Federal Government. It was "el cuco."
>
>     . . .
>
> "Cuco" is the bogey man, right[?]

**Id. at 63-64.**

Regarding Collazo, petitioner testified that he complained to her about the § 924(c)(1) charge while going over the presentence report, but that she told him that there was nothing in the report to which he could object. According to him, Collazo told him: "Tú eres un jodedor y tienes que hacer buche" (You are a drug dealer and you have to take it). **Id. at 51-52.** Collazo denied telling petitioner this, or threatening him in any way. **Id. at 67.**

AO 72A
(Rev 8/82)

**Civil No. 97-2068(SEC)**                                                                                                                                11

Confronted with two opposite accounts of the critical facts in this case, the Magistrate-Judge made an express credibility assessment regarding Collazo's testimony: "**Atty. Collazo's credibility is not an issue since her testimony was straightforward and unbiased.**" (**Civil No. 97-2068, Docket # 62, at 12**) (emphasis added). He did not make any determination, however, as to the credibility of the testimonies of petitioner and Mas-Mulero. Nevertheless, the statements immediately following Magistrate-Judge's credibility assessment as to Collazo, can be read as crediting her version of the facts over petitioner's and Mas-Mulero's:

> [Collazo] categorically denied any conversation with defendant in regard to his willingness to appeal his conviction after sentencing. A perusal of the transcripts of the proceedings, both the change of plea and sentence, does not reveal that . . . [petitioner] was hesitant as to the weapons charge nor the acceptance of responsibility for his criminal acts. He obtained a verbal plea and was sentenced as apprised by the court. [Petitioner] availed himself of his right of allocution and did not state any issue to the Court regarding the statement of facts presented by the government during his plea.

**Id**. These statements find clear support on the record. Thus, while the Magistrate-Judge did not explicitly make a choice of credibility between the testimonies he heard, we, after having carefully reviewed the transcript, now make that choice in favor of Collazo, which is fully consistent with the Magistrate-Judge's assessment. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980) (holding that the Federal Magistrates Act, 28 U.S.C. § 636(b)(1) does not require the district judge to rehear the testimony on which the magistrate based his findings and recommendations in order to make an independent evaluation of credibility); Gioiosa v. United States, 684 F.2d 176, 178 (1st Cir. 1982) (same). Therefore, having determined that petitioner did not instruct Collazo to file a notice of appeal, we find that petitioner's loss of his right to appeal cannot be attributed to his attorney's conduct. This, however, is not dispositive of this case.

**Civil No. 97-2068(SEC)**                                                                                              12

The Magistrate-Judge determined that because petitioner was unable to communicate with counsel during the ten-day period to file a notice of appeal, he should be entitled to habeas relief by means of re-sentencing so that his right to appeal may be reinstated.

> Attorney Collazo . . . state[d] that she lost contact with . . . [petitioner] after the date of sentence and is unable to assure the court whether he had a change of heart during the time period allowed to appeal. An indigent's right to counsel on appeal requires counsel wishing to withdraw on the ground that the appeal has no merit to first act as an advocate for the indigent and file a brief 'referring to anything in the record that might arguably support the appeal.' Anders v. California, 386 U.S. 738, 744-45 (1967). The court is to consider whe[ther] denial of counsel leaves a defendant completely without representation during appellate proceedings. Penson v. Ohio, 488 U.S. 75 (1988). During the term . . . [petitioner] had to appeal, his attorney had moved her offices for force majeure to another location and defendant could only reach her by telephone. Both petitioner and his common-law wife testified they attempted several times to call but were unable to personally speak with the appointed counsel.
>
> The controversies raised in petitioner's motion for post-conviction relief were referred to this magistrate for an evidentiary hearing and thereafter issuance of a report and recommendation. It is uncontroverted that . . . [neither petitioner] nor his attorney filed a direct appeal to his conviction and sentence. However, petitioner's claim (sic) the failure to file such an appeal in a timely fashion should be attributed to court[-]appointed counsel for his sentence.
> . . .
>
> -   There is no doubt that unable to communicate with his counsel, indigent . . . [petitioner] was deprived of his constitutional right to file a timely appeal to his conviction and sentence. The Sixth Amendment guarantee to assistance of counsel covers every step in the proceeding of a defendant, including appeal. Evitts v. Lucey, 469 U.S. 387 (1985). Furthermore, in Bonneau v. United States, 961 F.2d 17 (1st Cir. 1992), there is no need to first show that there is a meritorious appellate issue to grant relief since an appeal from a district court judgment of conviction is a matter of right. Rodríguez v. United States, 395 U.S. 327 (1969) . . .

> Petitioner should be entitled to have the right to a direct appeal reinstated, as a consequence of relief being granted in this § 2255 petition by means of a re-sentencing.

**(Civil No. 97-2068, Docket # 62, at 12-14).**

The Magistrate-Judge's conclusion is premised on four grounds: (1) that Collazo could not assert "whether . . . [petitioner] had a change of heart during the time period allowed to appeal;" (2) that Collazo had the responsibility of filing an Anders brief before withdrawing from representing petitioner; (3) that "[d]uring the term . . . [petitioner] had to appeal, . . . [Collazo] had moved her offices for force majeure to another location and . . . [petitioner] could only reach[] by telephone;" and (4) that "both petitioner and his common-law wife testified they attempted several times to call but were unable to personally speak with the appointed counsel." **Id. at 12-13.**

These reasons, however, do not entitle petitioner to the requested relief. First, the record does not support a finding that Collazo "lost contact" with petitioner, or that she could not assure whether he had a "change of heart" regarding his appeal. Following is an excerpt of the pertinent part of the evidentiary hearing transcript:

> Q. Ms. Collazo, by any chance did you obtain a written waiver from Mr. Pérez Olivo stating that he did not want to appeal his sentence?
>
> A. I did not obtain a written waiver because at that time he did not mention that he wanted to appeal, sir.
>
> Q. At that time. Did you inquire whether or not he had changed his mind after that time[?]
>
> A. Are you . . .?
>
> Q. Let me rephrase the question.
>
> A. Yes, sir. I would appreciate that.

**Civil No. 97-2068(SEC)**                                                                                                                14

> Q. Was that [the sentencing hearing] the last time that you saw Mr. Pérez Olivo?
>
> A. Yes, sir, I believe it was.
>
> Q. Was that the last time that you spoke with Mr. Pérez Olivo?
>
> A. I don't remember, sir. In terms of having a telephone conversation, I don't remember, sir.
>
> Q. Did you inquire whether Mr. Pérez Olivo had a change of heart and wanted to appeal his sentence withing the term for appeal?
>
> A. Do you – are you pertaining to the fact that if I called him, sir? Is that what you're pertaining to?
>
> Q. Any way. Any type of inquiry.
>
> A. No, sir. I don't remember having called him in regards, specifically to that point.
>
> Q. The truth is that you didn't see him after that.
>
> A. No, I don't remember having seen him after that.

**Id. at 18-19**.

Collazo did not lose contact with petitioner because she was not trying to keep in contact with him. She was specifically appointed to represent petitioner during the sentencing phase of his case and, once it was over, and because she was not instructed to file a notice of appeal, she had no reason to keep in contact with him. In his response to the government's objections to the Magistrate-Judge's report and recommendation, petitioner cites Baker v. Kaiser, 929 F.2d 1495 (10th Cir. 1991) suggesting that, even if he did not direct counsel to file a notice of appeal, counsel had an obligation to contact him during the ten-day period to appeal to inquire about whether he had changed his mind. Petitioner's reliance on Baker, however, is misplaced.

**Civil No. 97-2068(SEC)**                                                                                                                        15

In <u>Baker</u>, the defendant was convicted after a jury trial. After the trial judge sentenced him, he advised the defendant of the term to file a notice of appeal. The judge asked the defendant whether he wanted to appeal, and his counsel informed that he was going to reserve that. At that time, counsel withdrew, and the state public defender was appointed to represent him on appeal. <u>Id.</u> at 1497. The state public defender, however, never contacted the defendant during the term to file a notice of appeal; he did not "advise him of the pros and cons of appealing his conviction, and did not ascertain whether he wanted to appeal." <u>Id.</u> at 1499-500. Consequently, the Tenth Circuit held, the defendant "did not receive professional assistance so that he could make an informed decision about whether to pursue a direct appeal." <u>Id.</u> at 1500. By contrast, when the conviction is obtained pursuant to a guilty plea, that court has held that <u>Baker</u> is inapplicable. In this context, counsel's assistance will be deemed ineffective for failing to consult with the defendant concerning his right to appeal only if: (1) the defendant made "a claim of error . . . on constitutional grounds, which could result in setting aside the plea," or (2) "the defendant inquire[d] about an appeal right . . ." <u>Hardiman v. Reynolds</u>, 971 F.2d 500, 506 (10th Cir. 1992).

The First Circuit, however, has yet to rule on these issues. See <u>Berrío-Callejas v. United States</u>, 1997 WL 704419, at *1 (1st Cir.) (unpublished per curiam opinion). However, applying those principles which may be gleaned from the <u>Baker</u> and <u>Hardiman</u> holdings to the case at bar, we find that petitioner was not denied effective assistance of counsel. Even assuming that petitioner, who was convicted pursuant to a guilty plea, attempted to communicate with attorney Collazo, **the latter did not have an obligation to contact him during the ten-day period to file a notice of appeal, in order to inquire whether he had changed his mind. Petitioner did not assert legal innocence or raise any constitutional errors regarding his plea either at the change of plea**

**Civil No. 97-2068(SEC)** 16

**hearing or at the sentencing hearing.** Moreover, he did not direct Collazo to file a notice of appeal. Finally, it is undisputed that after the sentencing concluded, petitioner knew of his right to appeal and the term to file a notice of appeal.

Second, contrary to the Magistrate-Judge's determination, Collazo did not have a responsibility to file an Anders brief because she did not withdraw from representing petitioner; she was appointed by the Court specifically to assist petitioner during the sentencing phase of his case. Furthermore, the obligation to file an Anders brief only arises when counsel on appeal wishes to withdraw upon a determination that a defendant's appeal has no merit, see Anders v. California, 386 U.S. 738, 744 (1967) (holding that counsel could not withdraw merely by advising the court of his conclusion that defendant's appeal has no merit, but must include with the motion to withdraw "a brief referring to anything in the record that might arguably support the appeal"). See also McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 439 (1988); Penson v. Ohio, 488 U.S. 75, 80 (1988). That is clearly not the case here.

Third, the Magistrate-Judge found that "[d]uring the term . . . [petitioner] had to appeal, ... [Collazo] had moved her offices for force majeure to another location and . . . [petitioner] could only reach[] by telephone" (**Civil No. 97-2068, Docket # 62, at 13**). However, as the transcript of the evidentiary hearing clearly shows, **Collazo had already concluded moving her office at least five days before petitioner's sentencing hearing (Civil No. 97-2068, Docket # 67, at 8), thus precluding any implication to the effect that, because of the move, Collazo was unavailable for plaintiff during the term to appeal.**

Fourth, even if petitioner and his common-law wife attempted to communicate with Collazo, their efforts were not sufficient. They did not contact another attorney; they did not bring the issue

**Civil No. 97-2068(SEC)** 17

to the Court's attention; and they did not try to meet with attorney Collazo either at the courthouse or at her office. Petitioner was not imprisoned during the ten-day period to file a notice of appeal; he was free after having been granted the privilege of voluntary surrender. His means, therefore, were not limited. Petitioner's conduct is hardly that of a man in despair, as Mas-Mulero testified at the evidentiary hearing.

For the foregoing reasons, we accept and adopt the Magistrate-Judge's credibility assessment as to attorney Collazo's version of the facts, although we decline to accept his recommendation concerning relief. Accordingly, the Magistrate-Judge's report and recommendation is hereby **ACCEPTED IN PART** and **REJECTED IN PART**. The Court further **ORDERS** that the judgment entered on February 13, 1998 dismissing petitioner's § 2255 petition in its entirety (**Docket # 30**) be **REINSTATED**. The above-captioned action shall, therefore, be **DISMISSED**. Amended judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 26TH day of August, 1999.

SALVADOR E. CASELLAS
United States District Judge